FILED
2009 Dec-22 AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV** |
| **TIM SMALL CONSTRUCTION, LLC** | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Comes Now Pennsylvania National Mutual Casualty Insurance Company ("Penn National") and hereby files this action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 2201, *et seq.* and 28 U.S.C.A. §§ 1332, 1333 and states as follows:

### PARTIES

1. Penn National is a corporation incorporated under the laws of Pennsylvania, with its principal place of business in Pennsylvania.

2. Tim Small Construction, L.L.C. ("Tim Small") is a limited liability company organized in Alabama with its principal place of business in Jefferson County, Alabama, and the members of Tim Small are residents of Alabama.[1]

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter under 28 U.S.C.A. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and because there exists

---

1 For purposes of diversity, a limited liability company is a citizen of any state of which a member of the company is

complete diversity of citizenship among the Plaintiff and the Defendant. Venue of this suit is appropriate in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C.A. § 1391 because Penn National does business in the Northern District of Alabama and Tim Small's principal place of business is located in the Northern District of Alabama.

## FACTUAL BACKGROUND

4. This is a declaratory judgment action arising from a lawsuit Tim Small filed against Kleman Plaza, LLLP ("Kleman Plaza")2 on November 21, 2008, styled *Tim Small Const. Co., LLC v. Kleman Plaza, LLLP*, CV 2008-CA-3832 (Circuit Court for Leon County, Florida)(hereafter the "Underlying Litigation"), seeking payment for services Tim Small rendered in the construction of a commercial building in Florida (Ex. A). On April 17, 2009, Kleman Plaza filed its Answer, Affirmative Defenses and Third Party Complaint (hereafter "Counterclaim") which included a counterclaim against Tim Small alleging a single action for breach of contract against Tim Small for failure to "timely and adequately perform the scope of its work, failing to cure deficiencies in its work in accordance with the terms of the Construction Contract and by failing to engage the appropriate amount of skilled workers for the Construction Project as required by the Construction Contract." (Ex. B, p. 11). Kleman Plaza also filed a Third-Party Complaint against Hartford Casualty Insurance Company ("Hartford") to recover damages from the performance bond Hartford issued for the work of Tim Small (Ex. B, pp. 11-12).

### The Construction Contract

5. On September 12, 2005, Kleman Plaza entered into a Contract Agreement (hereafter "Construction Contract") with Tim Small for the Plaza Tower Project ("Plaza Tower")(Ex. C).

---

a citizen. *Rolling Greens, MHP, L.P. v. Comcast SCH Holding, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).
  2 Pursuant to Fla. Statute § 620.8101 a limited liability limited partnership (LLLP) is a limited partnership

Kleman Plaza agreed to pay Tim Small approximately $4.5 million to "provide labor, material, equipment, supervision, transportation and anything necessary to furnish and install all Concrete Formwork complete, as shown on the drawings for the referenced project. . . ." Tim Small warranted that its work would be "of good quality, free from faults and defects and in conformance with the Contract Documents." Tim Small's work was to be completed within 235 days. The Construction Contract allowed Kleman Plaza to terminate Tim Small if, in Kleman Plaza's opinion, Tim Small understaffed the project, failed to promptly prosecute the work or failed to promptly correct any defective work. In the event Kleman Plaza terminated the contract with Tim Small, no further payments would be due under the Construction Contract until the work was completed and accepted. Any alleged breach of the Construction Contract would be governed by Florida law. Tim Small was required to purchase a 100% Performance and Payment Bond which it did from Hartford.

6. Tim Small began work on the Plaza Tower in January 2006 and finished in January 2008. Tim Small described the project as a "construction managed job" where Tim Small was the prime contractor for the concrete form work. Tim Small performed the work on this project useing 45 of its own employees and no subcontractors.

**The Policy**

7. Tim Small was insured under a Penn National Commercial General Liability policy (the "Policy") for the period of May 13, 2007 through May 13, 2010 (Ex. D).3 The terms of the Policy provided as follows:

A. Coverages

1. Insuring Agreement

---

where the general partner is not personally liable for the acts of the limited partnership.

3 Thus, Penn National did not insure Tim Small when it entered into the Construction Contract nor when it began work on the Plaza Tower. Penn national has attached only the quoted pages of the Policy in order to avoid belaboring the Court.

      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

***

b. This insurance applies to "bodily injury" and "property damage" **<u>only if</u>**:

**(1)** The "bodily injury" or "property damage" is **<u>caused by an "occurrence</u>**" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

(emphasis added).

The Policy defined "occurrence" as follows:

SECTION V - DEFINITIONS

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The claims at issue in the Underlying Litigation do not involve any allegations of "bodily injury." Instead the Underlying Litigation seeks to recover economic loss arising from alleged "property damage." The Policy defined "property damage" as follows:

17. "Property Damage"

a. Physical injury to tangible property including all resulting loss of use of that property. ...

b. Loss of use of tangible property that is not physically injured.

8. The Policy contained the following exclusions:

2. Exclusions

This insurance does not apply to:

b. Contractual Liability
"Bodily Injury" or "Property Damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. …4

***

j. Damage to Property

"Property damage" to:

***

**(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or**

**(6) That particular part of real property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.**

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products–completed operations hazard".

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work

**"Property damage" to "your work" arising out of it or any part of it and included in the "products–competed operations hazard".**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

***

4 This exclusion does not apply to "insured contracts" but the claims at issue do not involve third-party claims requiring Tim Small to assume the liability of Kleman Plaza.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) **A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**

(2) **A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, **inspection, repair, replacement, adjustment, removal** or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The policy defined "your product" and "your work" as follows:

20. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

        (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

***

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

***

21. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf;

(Ex. D)(emphasis added).

**The Alleged Construction Defects**

9. On June 9, 2008, Kleman Plaza's lawyer wrote Hartford making a claim on the Performance Bond of approximately $1.9 million (Ex. E). Kleman Plaza claimed that Tim Small understaffed the project leading to a 13 month delay. Kleman Plaza also claimed that Tim Small failed to remediate "rampant defective work" including uneven ceilings, honeycombed concrete and bowed structural elements. Kleman Plaza itemized its damages which included damages for labor costs and overhead incurred due to the delay in completion of the project and costs associated with correcting the alleged defects in the concrete work. On the same date, Kleman Plaza declared Tim Small to be in default of the Construction Contract for failing to "adequately perform the concrete

formwork for the Construction Project and for failing to cure numerous deficiencies in its work within the time prescribed by the Construction Contract."

10. Kleman Plaza specified the following as damages it sought to recover against Tim Small as "a direct result of delays and/or defective work by Tim Small:"

a. Supervision and management cost;
b. Office expenses;
c. Union Labor for cleaning and safety;
d. Insurance;
e. Dumpster service;
f. Shuttle services;
g. Tower cranes rental;
h. Tower cranes overtime;
i. Post tension inspection services;
j. Boom pump costs;
k. Consulting fees for the threshold inspector;
l. Owner-employee payroll
m. Trips to Tallahassee; and
n. Deficiencies and other back charges assessed against Tim Small.

11. On September 5, 2008, Kleman Plaza terminated the Construction Contract with Tim Small claiming that it had not corrected the defective work (Ex. F). In its September 5, 2008, letter to Tim Small, Kleman Plaza's lawyer stated that Tim Small had repeatedly been notified of deficiencies in its work, had failed to remediate deficient work and had failed to properly staff the project. Kleman Plaza also claimed that it had incurred "significant back charges relative to remedial work that has already been performed at the Owner's request due to [Tim Small's] failure to do same."

**Tim Small's Claim for a Defense in the Underlying Litigation**

12. On August 13, 2009, Penn National received a General Liability Notice of Occurrence ("Notice of Occurrence") from J.R. Prewitt & Associates on behalf of Tim Small (Ex. G). The date of occurrence was given as August 13, 2009, and the description of occurrence was stated as

"claimant Kleman Plaza/Hartford Ins. avers Insured defaulted on construction contract, failed to remediate defective work, etc." On August 26, 2009, Penn National wrote the insured's lawyer stating that Penn National was investigating the claim under a reservation of rights. After conducting an investigation of the claim, on December 18, 2009, Penn National notified Tim Small that there was no coverage provided under the terms of the Policy for the counterclaim Kleman Plaza had filed against Tim Small in the Underlying Litigation.

**THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

13. The amount in controversy in this declaratory judgment action exceeds the jurisdictional amount of $75,000. In a declaratory judgment action, the amount in controversy is determined as follows:

> In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. The plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. Where, as here, an insurer seeks a determination that it has no duty to defend a separate, underlying lawsuit, the court may take into account not only the recovery sought in the underlying suit, but also the pecuniary value of the [insurer's] obligation to defend the separate lawsuit.

*Owners Ins. Co. v. Bryant*, 2006 WL 50488 (M.D. Ga. 2006), citations omitted.

In this case, Penn National seeks a determination as to whether it has a duty to defend Tim Small in the Underlying Litigation. The policy at issue in this declaratory judgment action has a limit of $1 million which may be considered in determining the amount on controversy where an insurer is seeking a determination of its duty to defend. See, *Coregis Ins. Co. v. McCollum*, 955 F.Supp. 120, 124 (M.D. Fla. 1997). As shown above, the Court may also consider the recovery sought in the underlying litigation as well as the costs of the insurer's duty to defend the insured in that action. *Owners Ins. Co. v. James*, 295 F.Supp.2d 1354, 1359 (N.D. Ga. 2003), citing *Stonewall*

*Ins. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976). Kleman Plaza has claimed almost $2 million as damages in its counterclaim and the costs of defending Tim Small in that action would certainly exceed $75,000. As a result, the amount in controversy clearly exceeds $75,000.

**COUNT ONE: DECLARATORY JUDGMENT**

14. Penn National re-alleges and incorporates paragraphs 1–13 as if the same were set out fully herein.

15. Tim Small seeks a defense from Penn National for claims made against Tim Small in the Underlying Litigation. Pursuant to the terms of the policy, Penn National would only owe Tim Small a defense if the claims made against Tim Small sought "property damage" caused by an "occurrence" during the policy period.

16. In this case, Kleman Plaza's counterclaim seeks a recovery from Tim Small only for breach of the Construction Contract. Kleman Plaza's claim for breach of contract does not constitute an "occurrence" as defined under the Policy and the damages sought by Kleman Plaza do not fall within the insuring clause of the Policy nor do they constitute costs and expenses related to physical injury or loss of use to tangible property.

17. Moreover, even if the counterclaim alleged an "occurrence", which it does not, such claims would be excluded from coverage under the exclusions quoted above because Kleman Plaza seeks to recover only for the damages associated with the removal, repair and / or replacement of Tim Small's own work.

**WHEREFORE,** Penn National seeks a declaration from this Court as follows:

A. That a bona fide justiciable controversy exists between the parties which should be resolved.

B. The relevant provisions of the subject Penn National Policy and all applicable amendments and endorsements thereto, are clear and unambiguous.

C. That there is no defense afforded under the Penn National policy to Tim Small for the counterclaim made against it in the Underlying Litigation.

Steve R. Burford
Attorney for Plaintiff Penn National Mutual Casualty Insurance Company
RITCHEY, SIMPSON, GLICK & BURFORD, PLLC
The Mountain Brook Center
2700 Highway 280, Suite 203W
Birmingham, Alabama 35223
Ph: (205) 876-1600
Fax: (205) 876-1616
Email: srburford@ritcheysimpson.com

**PLEASE SERVE THIS COMPLAINT ON THE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

Tim Small Construction, LLC
c/o Timothy H. Small
1005 Indian Trail Road
Indian Springs, Alabama 35124